**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-23-01240-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Yanet Cariaga Sixto, | |
| Defendant. | |

Pending before the Court is a motion by Defendant Yanet Cariaga Sixto ("Defendant") to authorize her court-appointed counsel in this criminal case to represent her in immigration court for the limited purpose of challenging her detention in that proceeding. (Doc. 41.) For the following reasons, Defendant's motion is denied.

**RELEVANT BACKGROUND**

In July 2023, Defendant was arrested and charged with the crime of illegal reentry after removal, in violation of 8 U.S.C. § 1326. (Doc. 1.)

At the outset of this case, Defendant was provided court-appointed counsel pursuant to the Criminal Justice Act ("CJA"). (Doc. 3.) Soon thereafter, Defendant had a detention hearing. (Doc. 13.) Applying the Bail Reform Act ("BRA"), the magistrate judge concluded that Defendant should be released on her own recognizance with conditions. (*Id.*) Nevertheless, "[u]pon her release in her criminal case, Immigration and Customs Enforcement (ICE) detained Defendant based on her [May 2013] Order of Removal. Defendant was released from U.S. Marshal's custody and was transferred to immigration

custody pursuant to an immigration detainer. . . . [Defendant] has remained in immigration custody during the pendency of both her criminal and immigration cases." (Doc. 27 at 2.) The source of authority for Defendant's custody in the immigration proceeding is the Immigration and Nationality Act ("INA").

In September 2023, based on these developments, Defendant filed a motion to "enjoin ICE from continuing [her] detention or dismiss this case." (Doc. 23 at 3.)

In November 2023, the Court denied Defendant's motion to dismiss or for injunctive relief. (Doc. 30.) In a nutshell, the Court "join[ed] the unbroken line of courts, from both within and outside the Ninth Circuit, that have concluded that a criminal defendant who has been charged with a violation of 8 U.S.C. § 1326 but ordered released from custody for criminal purposes under the [BRA] may still be detained for immigration purposes under the [INA]." (*Id.* at 4.) Among other things, the Court noted that "the Ninth Circuit's recognition of 'the possibility that the defendant, if released from criminal custody, would be held in immigration custody' seems to foreclose Defendant's position here, which is that continued immigration custody following the issuance of a BRA release order is categorically impermissible." (*Id.* at 6, quoting *United States v. Diaz-Hernandez*, 943 F.3d 1196 (9th Cir. 2019).)

## DISCUSSION

Defendant now argues that the attorney who has been appointed to represent her in this criminal case pursuant to the CJA should also be authorized to "represent her on the detention issue in immigration court." (Doc. 41 at 2.) According to Defendant, such authorization is permissible under 18 U.S.C. § 3006A(c) and § 210.20.30 of the *Guide to Judiciary Policy* because she "is in ICE detention purely because the government was able to execute a detainer on her after this Court released her under the [BRA]. Thus, the issues of law and fact arise from, are the same as, or closely related to this underlying criminal charge. In fact, the same investigative agency, namely ICE, referred this case to the United States Attorney's Office for criminal prosecution as well as concurrently prosecuting her in immigration court. The issue of Ms. Sixto's release is entwined with the current

prosecution against her." (*Id.*) Defendant also identifies the following four reasons why authorizing her criminal counsel to represent her in immigration court is reasonably necessary to protect her rights in this proceeding:

> (1)   The [BRA] defines the scope of constitutional right under the United States Constitution's 8th Amendment to pretrial release. ICE's subsequent actions in continuing to detain Ms. Sixto have thwarted her constitutional rights to pretrial release.
>
> (2)   Ms. Sixto's release would facilitate the defense on the principal criminal charge before this court. The time Ms. Sixto currently spends in immigration custody likely will be credited against whatever time she would receive under the current charge. Likewise undersigned counsel's ability to represent her on her immigration detention hearing is a natural outgrowth of Ms. Sixto's rights under the [BRA].
>
> (3)   Ms. Sixto's immigration detention has caused undersigned counsel great difficulty in preparing her case. Undersigned counsel called the immigration detention center numerous times before he was able to get a human being to arrange for a visit with Ms. Sixto. Her release would greatly facilitate preparation of this pending criminal case.
>
> (4)   Although somewhat more attenuated, under the Federal sentencing guidelines and the government's District of Arizona standard plea offers, Ms. Sixto has served in immigration detention any time she would receive under the current charge. Although this would be a motion for downward departure, undersigned counsel's experience is these motions are readily granted given the inextricable connection between her immigration case and her current criminal charge.

(*Id.* at 3-4.)

These arguments are unavailing. The starting point for the analysis is the text of § 3006A(c), which provides that "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court through appeal, including ancillary matters appropriate to the proceedings." *Id.* The question here is whether Defendant's case in immigration court qualifies as an "ancillary matter" that is "appropriate to the proceedings."

As for the first inquiry, § 210.20.30(b) of the *Guide to Judiciary Policy* explains

that "[i]n determining whether a matter is ancillary to the proceedings, the court should consider whether the matter, or the issues of law or fact in the matter, arose from, or are the same as or closely related to, the facts and circumstances surrounding the principal criminal charge."  Defendant is likely correct that a close relationship is present here, such that the case in immigration court qualifies as an "ancillary" matter, but that is only a prerequisite to an authorization order under § 3006A(c)—representation in the ancillary matter must also be "appropriate to the proceedings."

Under § 210.20.30(c), "[i]n determining whether representation in an ancillary matter is appropriate to the proceedings, the court should consider whether such representation is reasonably necessary to accomplish, among other things, one of the following objectives: (1) to protect a Constitutional right; (2) to contribute in some significant way to the defense of the principal criminal charge; (3) to aid in preparation for the trial or disposition of the principal criminal charge; (4) to enforce the terms of a plea agreement in the principal criminal charge; (5) to preserve the claim of the CJA client to an interest in real or personal property subject to a civil forfeiture proceeding . . .; or (6) to effectuate the return of real or personal property belonging to the CJA client which may be subject to a motion for return of property under Fed. R. Crim. P. 41(g) . . . ." *Id.* (emphasis omitted).  It is in relation to these requirements that Defendant's motion falters.

Defendant's first argument about the reasonable necessity of representation in immigration court—that "ICE's subsequent actions in continuing to detain Ms. Sixto have thwarted her constitutional rights to pretrial release" under the Eighth Amendment as effectuated through the BRA—is a non-starter for the reasons explained in the November 2023 order.  (Doc. 30 at 4, citation omitted ["[P]retrial release under the BRA does not preclude pre-removal detention under the INA."].)

The premise underlying Defendant's second and third arguments is that her continued detention by immigration authorities is interfering with her ability to prepare a defense to the criminal charge in this case.  The problem with this premise is that it is conclusory and undeveloped.  Defendant does not identify the defense she seeks to raise in

this § 1326 case or explain, with any specificity, why her counsel's difficulties in meeting with her while in immigration custody have undermined her ability to develop that unspecified defense. Nor does Defendant provide any specifics about those meeting-related difficulties. The motion simply asserts that "[u]ndersigned counsel called the immigration detention center numerous times before he was able to get a human being to arrange for a visit with Ms. Sixto." (Doc. 41 at 3.) From this, it sounds like defense counsel has been able to meet with Defendant since she entered immigration custody. (*See also* Doc. 39 at 1 [Defendant's motion to continue trial, in which defense counsel referenced "the issues I have had to schedule a visit with Ms. Cariaga Sixto" but acknowledged "[w]e are set to visit her January 18th"].) Even if the process of arranging such meetings requires more phone calls than would usually be required for a criminal defendant in BRA custody, Defendant does not explain why this surmountable (if inconvenient) logistical issue is somehow undermining her ability to develop a defense to the pending criminal charge.

Nor is there any merit to Defendant's fourth argument. Even if, as she asserts, she will eventually receive some form of sentencing credit for time spent in immigration custody, she does not explain why this dynamic makes it reasonably necessary for her criminal defense attorney to represent her in immigration court to challenge her civil detention. Perhaps her argument is that it would be unfair if the amount of time she spends in immigration custody exceeds whatever sentence may eventually be imposed in this case, but she cites no authority to support that proposition. Any such argument would also be difficult to reconcile with the principle, discussed at length in the November 2023 order, that "detention of a criminal defendant pending trial pursuant to the [BRA] and detention of a removable alien pursuant to the [INA] are separate functions that serve separate purposes and are performed by different authorities." (Doc. 30 at 6, citation omitted.)

Finally, Defendant's motion does not acknowledge § 210.20.50(d), which specifically identifies "removal or deportation proceedings before the Immigration Court" as a category of proceedings that is presumptively "*not* covered by or compensable under the CJA." *Id.* (emphasis added and capitalization omitted). Although the Court does not

foreclose the possibility that a § 1326 defendant with CJA counsel might, on a different record, be able to establish the necessity of representation by the same counsel in immigration court on a discrete issue—indeed, § 210.20.50(d) includes that caveat "But see: § 210.20.30 (ancillary matters)," which seems to anticipate that possibility—such a request cannot, as here, be based only on vague concerns about the logistical difficulty of arranging meetings. *Cf. Franco-Gonzalez v. Holder*, 767 F. Supp. 2d 1034, 1058 n.20 (C.D. Cal. 2010) ("The Court is not persuaded that it has authority under the CJA to appoint counsel to represent Plaintiffs in their administrative proceedings before the Immigration Court.").

Accordingly,

**IT IS ORDERED** that Defendant's motion to allow her CJA counsel "to appear on her behalf to ask for a bond in immigration court" (Doc. 41) is **denied**.

Dated this 30th day of January, 2024.

_____
Dominic W. Lanza
United States District Judge