**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-23-01240-001-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Yanet Cariaga Sixto, | |
| Defendant. | |

Pending before the Court is Defendant's amended motion to dismiss the indictment. (Doc. 55.) The motion is fully briefed (Docs. 56, 57) and the Court concludes that oral argument is unnecessary. *See* LRCiv 7.2(f); LRCrim 12.1(a), 47.1. For the following reasons, the motion is denied.

## BACKGROUND

On July 6, 2023, Defendant was arrested and charged with a violation of 8 U.S.C. § 1326. (Doc. 1.) According to the operative complaint, Defendant "applied for admission into the United States via the vehicle lanes" at the San Luis Port of Entry "and presented a Californ[i]a identification card bearing her name and photograph." (Doc. 6 at 3-4.) The complaint alleges that although Defendant initially identified herself as a United States citizen, she eventually acknowledged that she was born in Cuba, that after entering the United States she had not shown up for her scheduled hearings in immigration court, and that a final order of removal had been entered against her. (*Id*.) The complaint further alleges that such an order of removal was, in fact, entered against Defendant in May 2013.

1  (*Id.* at 3.) The complaint also alleges that Defendant has a fairly extensive criminal history,
2  including a 1994 drug conviction, a 1994 theft conviction, a 1996 drug conviction, a 2000
3  domestic violence conviction, a 2004 child abuse conviction, and a 2004 domestic violence
4  conviction that resulted in a sentence of 60 months' imprisonment. (*Id.*)

5  On July 18, 2023, a detention hearing took place. (Doc. 12.) Over the government's
6  objection, Defendant was ordered to be released from criminal custody pursuant to the Bail
7  Reform Act ("BRA"). (Doc. 12, 13.) However, both sides agree that upon the issuance of
8  the magistrate judge's release order, Defendant was taken into immigration custody by
9  representatives of Immigration and Customs Enforcement ("ICE") pursuant to the
10 Immigration and Nationality Act ("INA").

11 On August 29, 2023, Defendant was indicted on the § 1326 charge. (Doc. 15.)

12 On September 19, 2023, Defendant moved to dismiss the indictment. (Doc. 23.)
13 According to Defendant, dismissal was warranted because "ICE['s] policy to continue to
14 detain defendants release[d] under the BRA while they still face charges under 8 U.S.C.
15 § 1326 renders Ninth Circuit law and the BRA a farce," because "[a]llowing the executive
16 branch to detain a person after the BRA decision for release thwarts this process giving the
17 government a way of circumventing an individual's constitutional protection," and because
18 "[d]etaining a defendant in ICE custody creates a burden on the ability of counsel to
19 communicate with a defendant and prepare the case, implicating the United States
20 Constitution's Sixth Amendment." (*Id.* at 2, 3.)

21 On November 3, 2023, the Court issued an order denying Defendant's motion to
22 dismiss. (Doc. 30.) In doing so, the Court "join[ed] the unbroken line of courts, from both
23 within and outside the Ninth Circuit, that have concluded that a criminal defendant who
24 has been charged with a violation of 8 U.S.C. § 1326 but ordered released from custody
25 for criminal purposes under the [BRA] may still be detained for immigration purposes
26 under the [INA]." (*Id.* at 4, citations omitted.) The Court added that "to the extent
27 Defendant's argument is that her continued immigration detention pursuant to the INA is
28 improper because her Cuban citizenship makes it unlikely she will ever be deported, that

is an argument properly directed to the immigration courts as part of her immigration case, not to this Court as part of her criminal case." (*Id.* at 6.)

In November 2023 and again in January 2024, Defendant moved to continue the trial date. (Docs. 32, 39.) Although defense counsel asserted in each motion that "[t]his case is complicated by the defendant's continued ICE detention" (*id.*), counsel also noted in the latter motion that he was scheduled to meet with his client. (Doc. 39 at 1 ["We are set to visit her January 18th, 2024."].)

On January 23, 2024, defense counsel, who was appointed to represent Defendant in this case pursuant to the Criminal Justice Act ("CJA"), filed a motion for permission under the CJA to also represent Defendant in immigration court. (Doc. 41.)

On January 30, 2024, the Court denied the representation request. (Doc. 42.) Among other things, the Court noted that although "[t]he premise underlying [some of Defendant's arguments] is that her continued detention by immigration authorities is interfering with her ability to prepare a defense to the criminal charge in this case," "[t]he problem with this premise is that it is conclusory and undeveloped. Defendant does not identify the defense she seeks to raise in this § 1326 case or explain, with any specificity, why her counsel's difficulties in meeting with her while in immigration custody have undermined her ability to develop that unspecified defense. Nor does Defendant provide any specifics about those meeting-related difficulties. The motion simply asserts that '[u]ndersigned counsel called the immigration detention center numerous times before he was able to get a human being to arrange for a visit with Ms. Sixto.' From this, it sounds like defense counsel has been able to meet with Defendant since she entered immigration custody. Even if the process of arranging such meetings requires more phone calls than would usually be required for a criminal defendant in BRA custody, Defendant does not explain why this surmountable (if inconvenient) logistical issue is somehow undermining her ability to develop a defense to the pending criminal charge." (*Id.* at 4-5, cleaned up.)

On May 24, 2024, Defendant "was found inadmissible under the INA and ordered removed to Cuba." (Doc. 51 [joint status report].) However, Defendant has not yet been

removed to Cuba pursuant to that order—instead, she "remains in immigration detention." (Doc. 55 at 2. *See also* Doc. 56 at 2 ["On May 24, 2024, the Immigration Judge issued an order denying [Defendant's] request for asylum and cancellation of removal and ordered her removed to Cuba. Since then, she has been awaiting her travel documents to be issued by Cuba."].)

On July 15, 2024, Defendant filed another motion to continue the trial date. (Doc. 52.) Although this motion, like the previous ones, asserted that "[t]his case is complicated by the defendant's continued ICE detention" (*id.*), no additional details or explanation were provided.

On August 1, 2024, Defendant filed the pending motion to dismiss. (Doc. 55.)

On August 15, 2024, the government filed a response. (Doc. 56.)

On August 22, 2024, Defendant filed a reply. (Doc. 57.)

**DISCUSSION**

I.  The Parties' Arguments

The sole basis for Defendant's dismissal request is that "she has served more time [in pretrial custody] than this Court would impose on the current charge of reentry after deportation." (Doc. 55 at 1.) More specifically, Defendant contends that (1) under *Zavala v. Ives*, 785 F.3d 367 (9th Cir. 2015), she is entitled to sentencing credit for any time spent in immigration custody after indictment; (2) she is thus entitled to approximately 13 months of sentencing credit in this case as of August 2024, because she spent 22 days in criminal custody pursuant to the BRA and has thereafter been in immigration custody pursuant to the INA for a little over 12 months; and (3) she is only "facing a 4-10 month sentencing range before adjustments for accepting responsibility" under the Sentencing Guidelines. (*Id.* at 2-3.) Defendant concludes: "The Government has punished Yanette Sixto enough." (*Id.* at 4.)

The government opposes the dismissal request. (Doc. 56.) As an initial matter, the government argues that Defendant is not entitled to sentencing credit in this case for her time spent in immigration custody because *Zavala* only requires the provision of

- 4 -

sentencing credit when an alien is held in immigration custody "for the purpose of securing his attendance at a criminal proceeding" and does not require the provision of sentencing credit when, as here, "an alien [is] being held for deportation." (*Id.* at 1-2, cleaned up.) More broadly, the government argues that the sentencing-credit issue "need not be decided since there is no authority, cited by Defendant or otherwise, for this Court to dismiss an Indictment based on the possibility that a Defendant may receive a shorter term of incarceration under a plea agreement than the time a Defendant has already served in custody." (*Id.* at 2.)

In reply, Defendant begins by disagreeing with the government's interpretation of *Zavala*. (Doc. 57 at 1-2.) Defendant then argues, for the first time, that Federal Rule of Criminal Procedure 48(b) is the authority that supports her dismissal request. (*Id.* at 2.) Finally, Defendant argues that one of the purposes of the Sixth Amendment is to prevent "oppressive pretrial incarceration." (*Id.* at 2-3, cleaned up.)

II.     Analysis

Defendant's request to dismiss the indictment is denied. Even assuming, without deciding, that Defendant is entitled to sentencing credit in this case for the time she has spent in immigration detention, the premise underlying Defendant's dismissal request— that once a criminal defendant has spent more time in pretrial custody than the anticipated sentence in the case, the indictment must be dismissed—finds no support in the Federal Rules of Criminal Procedure or the relevant caselaw. Such a rule would also create perverse incentives, as a detained criminal defendant hoping to avoid a conviction could simply keep asking to continue the trial date and then move to dismiss the indictment based on the resulting delay.

Defendant's belated invocation of Rule 48(b) does not compel a different outcome. As an initial matter, "[t]he district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Regardless, Rule 48(b) provides in relevant part that "[t]he court may dismiss an indictment . . . if unnecessary delay occurs in . . . bringing a defendant to trial." *Id.* Although "[t]he phrase

'unnecessary delay,' as used in Rule 48(b), is not specifically defined in Rule 48 or elsewhere in the Federal Rules of Criminal Procedure . . . the Advisory Committee Notes accompanying the adoption of Rule 48 are instructive in helping us understand the meaning of this phrase. Those Notes indicate that Rule 48(b) was intended as 'a restatement of the inherent power of the court to dismiss a case for want of prosecution.' In other words, the Advisory Committee did not intend Rule 48(b) as an all-encompassing grant to district courts of supervisory authority over the prosecution of criminal cases, but rather as a recognition of a district court's power to dismiss a case that the government has failed to prosecute in a timely manner." *United States v. Begay*, 602 F.3d 1150, 1154 (10th Cir. 2010) (cleaned up).

Here, the delay in bringing Defendant to trial cannot be attributed to the government or a failure to prosecute in a timely manner. Rather, it is Defendant who has repeatedly asked for the trial date to be continued. Additionally, although Defendant has vaguely suggested in some of her filings that her placement in immigration custody is somehow interfering with her ability to meet with her court-appointed criminal counsel and prepare for trial, Defendant has never substantiated that suggestion, even after the Court specifically raised this point in a January 2024 order. (Doc. 42 at 4-5 ["Defendant does not . . . explain, with any specificity, why her counsel's difficulties in meeting with her while in immigration custody have undermined her ability to develop [a] defense. Nor does Defendant provide any specifics about those meeting-related difficulties. The motion simply asserts that '[u]ndersigned counsel called the immigration detention center numerous times before he was able to get a human being to arrange for a visit with Ms. Sixto.' From this, it sounds like defense counsel has been able to meet with Defendant since she entered immigration custody. Even if the process of arranging such meetings requires more phone calls than would usually be required for a criminal defendant in BRA custody, Defendant does not explain why this surmountable (if inconvenient) logistical issue is somehow undermining her ability to develop a defense to the pending criminal charge."].) Dismissal under Rule 48(b) is not remotely warranted under these

circumstances. *Cf. United States v. Elmardoudi*, 611 F. Supp. 2d 857, 863 (N.D. Iowa 2007) (denying dismissal request under Rule 48(b) and explaining that "[d]ue to Defendant's repeated requests for continuances and agreement to the current trial date, he cannot be heard to complain that there has been prejudicial post-indictment delay in his case").

Accordingly,

**IT IS ORDERED** that Defendant's amended motion to dismiss (Doc. 55) is **denied**.

Dated this 28th day of August, 2024.

Dominic W. Lanza
United States District Judge